UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LASALLE BANK NATIONAL ASSOCIATION,<br><br>  Plaintiff,<br><br>v.<br><br><br>PARAMONT PROPERTIES, LLC and KEITH BARKET,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)   Case No. 08-cv-2081<br>)<br>)   Hon. Amy J. St. Eve<br>)<br>)<br>)<br>)<br>)<br>) |

**BRIEF IN SUPPORT OF LASALLE'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES**

**INTRODUCTION**

Defendants owe LaSalle more than $9 million on a loan made by Lasalle to fund Paramont's acquisition and development of land for a residential real estate project. Defendant Paramont's obligation is based on a promissory note and Defendant Barket's obligation is based on a guaranty of that note.  Both Defendants try to avoid this debt by asserting four legally-deficient counterclaims/defenses:

First, Defendants claim LaSalle is liable under a negligence theory because LaSalle allegedly violated its own internal lending guidelines and breached a purported "duty of care" which Defendants claim lenders owe borrowers in administering loans.  This claim fails under the *Moorman,* or economic-loss doctrine, which holds a party cannot maintain a claim for negligence that causes only economic losses.  Instead, a party that sustains only economic losses is confined to a contract claim, if it has one.  Further, it is well established that lenders owe no fiduciary duties of any sort to their borrowers and that internal bank guidelines

regarding loan administration are for the **_bank's_** protection only.  These guidelines cannot serve as a source of any duty of care to the borrower.

Second, Defendants assert a free-standing claim against LaSalle for breach of the implied duty of good faith and fair dealing.  Breach of this duty is not an independent cause of action.  Rather, breach of the implied duty of good faith and fair dealing must be brought as a breach of contract claim based on the other party's bad faith in performing a specific contractual obligation in which it is vested with discretion.  Defendants allege no such claim.

Third, Defendants assert a negligent misrepresentation claim based on LaSalle's alleged promise to extend additional credit to Paramont after Paramont ran into problems with its real estate project.  The Illinois Credit Agreements Act was passed specifically to prohibit the type of lender liability claims and defenses Defendants assert here.  The Act forbids any claim or defense based on an oral representation not reduced to writing and signed by both parties.  Defendants have no such writing, much less one signed by both parties.

Fourth, Defendants assert a breach of contract claim on the underlying promissory note based on allegations that LaSalle failed to require Paramont to satisfy certain conditions precedent in the note before disbursing loan proceeds.   In other words, after first complaining that LaSalle did not lend it **enough** money, Paramont then argues that it need not repay the loan because LaSalle lent it **too much** money.  This claim fails for a number of reasons: (i) LaSalle's duty under the loan agreement is to make advances within the available limits of the borrower's line of credit when asked to  do so; (ii) LaSalle specifically did **not** undertake any contractual duty to police the expenditures of the loan proceeds or insure the project stayed on budget; rather the parties retained U.S. Title to perform that function; and (iii) even if LaSalle could have refused requests for loan advances, a party who has the benefit of a condition precedent in a contract also has a right to waive that condition.  This is why no court has ever

held that a party who waives a condition precedent that is in the contract for its benefit may be liable to the other party for breach of contract based on that waiver.

Notwithstanding Defendants' novel contract theory, the promissory note also contains a clause in which Paramont irrevocably ratifies all advances of loan proceeds. This clause bars the very breach of contract claim and defense Defendants now assert.

In addition to the joint claims/defenses that both Defendants assert, Barket asserts a declaratory judgment claim and an affirmative defense that his revocation of the guaranty was proper. To the extent it is based on the four claims above, it fails for the same reason those claims fail. To the extent it is based upon LaSalle's alleged delay or omission in disbursing certain funds to Paramont, it is barred by the guaranty's clause stating that Barket's obligations are not affected, released, or discharged in any way by LaSalle's delay or omission in disbursing funds to Paramont.

Finally, Defendants' "tack-on" affirmative defenses of failure to state a claim or mitigate damages should be stricken. LaSalle has adequately pleaded that it loaned Paramont $8.5 million, that Paramont has not repaid the loan, and that the interest on the loan continues to accrue each day. LaSalle has adequately pleaded that Barket, the owner of Paramont, signed a guaranty of the loan to Paramont but also hasn't paid LaSalle. This more than satisfies federal pleading requirements. What doesn't satisfy them is Defendants' failure to mitigate damages defense. This conclusory assertion doesn't satisfy the plausibility requirement in Rule 8.

For these reasons, each of Defendants' counter-claims should be dismissed and each of Defendants' affirmative defenses should be stricken.

**BACKGROUND**

On September 13 2005, Defendant Paramont established a $6,500,000 commercial line of credit from LaSalle, which took the form of a two-year Promissory Note, in order to acquire and develop residential property in Jefferson County, Missouri known as the Amberleigh Woods Project. (Defs' CC at ¶ 5)(Dkt. #15); (Note, Exhibit A to LaSalle's Compl.)(Dkt. #1).[1] Illinois law, including its statutes, governs the validity, enforcement, interpretation, construction, effect, and all other aspects of the Promissory Note. (Note at ¶ 9.3).

The other relevant terms of the Promissory Note state:

- That LaSalle will make an advance of funds upon request "which [LaSalle]in good faith believes to emanate from a properly authorized representative of [Paramont], whether or not that is in fact the case." (Note at ¶ 2.2(a)).

- That Paramont "does hereby irrevocably confirm, ratify and approve all such Advances by [LaSalle] . . . " (Note at ¶ 2.2(a)).

- That if LaSalle makes any Advance "into an escrow, such Advance shall be considered to be disbursed to [Paramont] from the date of deposit into that escrow . . ." (Note at ¶2.2(a)).

The Promissory Note was modified twice: the first time to raise the maximum credit commitment to $7,000,000 (Mod., Ex. B to LaSalle Compl.); the second time to raise the maximum credit commitment to $8,500,000 and extend the maturity date on the Promissory Note to May 1, 2008. (2d Mod., Ex. C to LaSalle Compl.).

Also in September 2005, Defendant Barket executed a Guaranty of Paramont's payment and performance obligations under the Promissory Note. (Guaranty, Ex. D to LaSalle Compl.).

---

[1] The allegations, accepted as true for purposes of this motion, are taken from Defendants' Answer, Counter-claims and Affirmative Defenses and from the documents attached to that pleading, *see, e.g. Witzke v. Femal*, 376 F. 3d 744, 749 (7th Cir 2004), or documents referred to in the pleading that are central to its claims or defenses. *See, e.g. Venture Associates Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 )(7th Cir. 1993). When Defendants' pleading contains allegations that are contradicted by the written documents upon which it relies, the written documents control. *See, e.g., Northern Indiana Gun & Outdoor Shows v. City of South Bend*, 163 F.3d, 149, 154 (7th Cir. 1998).

Illinois law, including its statutes, governs the validity, interpretation, effect, and all other aspects of the Guaranty.  (*Id.* at ¶ 17).

The other relevant terms of the Guaranty state:

- That Barket "agrees that the performance of the Obligations by [Barket] shall be a primary obligation . . " (Guaranty at ¶4).

- That these Obligations "shall not be released, discharged, or affected in any way by, any circumstance or condition (whether or not [Barket] shall have any knowledge thereof), including, without limitation:

    (b)    any termination, amendment, modification or other change in any of the Loan Documents . . .

    (d)    any failure, omission or delay on the part of . . .[LaSalle] to conform or comply with any term of any of the Loan Documents or any failure of [LaSalle] to give notice of any Event of Default (as defined in the Note);  (Guaranty at ¶ 4).

Using proceeds LaSalle disbursed under the Promissory Note, Paramont bought the property for the Amberleigh Woods Project in September 2005.  (Defs' CC at ¶3).  The Project development was to occur in two phases, with Phase I to include 110 lots and Phase II to include 114 lots.  (*Id.*)

In January 2006, LaSalle, Paramont, Arch Land LLC (the general contractor of the Project) and U.S. Title (the escrowee) entered into a Construction Loan Escrow Agreement for development of the Amberleigh Woods Project.  (Defs' CC at ¶ 8); (Escrow Agmt, Exhibt A to Counterclaims)(Dkt. #15, Part 2).  Under the Escrow Agreement, LaSalle agreed to deposit advances under the Promissory Note with U.S. Title, which in turn disbursed funds to Arch Land as payment for materials, labor, and services in developing the Project for Paramont.  (Escrow Agmt at ¶¶ 1-17).  Also, under the Escrow Agreement, U.S. Title was Paramont's agent for the purpose of receiving funds from LaSalle and Arch Land was Paramont's agent in all respects on the Project.   (Escrow Agmt at ¶¶ 11 and 22).

Defendants allege that Arch Land, Paramont's agent, mismanaged the Project, leading to cost overruns. (Defs' CC at ¶ 11). As Paramont approached the maximum commitment of $8,500,000 on the Promissory Note, Defendants allege LaSalle "assured Paramont that the Bank would increase its maximum commitment to cover overruns and some, if not all, of the Phase II costs." (Defs' CC at ¶13). These alleged promises are not in writing and are not signed by LaSalle or Paramont. Paramont eventually drew down the maximum $8,500,000 on the Promissory Note. (Defs' CC ¶ 16).

After Paramont failed to make the interest payments due in September and October 2007, LaSalle notified Paramont that it was in default, and exercised its right to accelerate the loan, making the entire balance immediately due and payable. (Defs' Ans. At ¶ 24).

## ARGUMENT

### I.  Legal Standard

To survive a motion to dismiss under F.R.C.P 12(b)(6), "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1959 (2007). When Defendants' pleading contains allegations that are contradicted by the written documents upon which it relies, the written documents control. *See, e.g., Northern Indiana Gun & Outdoor Shows v. City of South Bend*, 163 F.3d, 149, 154 (7th Cir. 1998).

The facts alleged and the documents upon which Defendants base their counter-claims and defenses show that the Defendants have pleaded themselves out of court. *See, e.g., Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995)(A plaintiff "can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts.").

**II.    Illinois' *Moorman* Doctrine Bars Defendants' Negligence Counter-Claim/Affirmative Defense and Lenders Do Not Owe Tort Duties to Borrowers.**

Defendants allege a litany of purported legal duties that LaSalle allegedly breached in Count I of their Counterclaim. (Defs' CC at ¶¶ 17-20). Defendants contend the source of these legal duties are LaSalle's internal lending guidelines, the relevant agreements, and "prudent lending practice." (Defs' CC at ¶¶ 11-12, 18). Defendants' allegations make it clear that Defendants sustained only economic losses from the alleged breaches of these alleged duties. (Defs' CC at ¶¶ 20).

Under Illinois law, a party cannot maintain a claim for negligence that results only in economic losses. *See, e.g. Moorman Manufacturing v. National Tank Co.*, 435 N.E.2d 443, 450-51 (Ill. 1982). "Put another way, the economic-loss rule is founded on the theory that parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover damages caused by a breach of contract." *Mars, Inc. v. Heritage Builders of Effingham, Inc.*, 763 N.E.2d 428, 434 (Ill. App. 2002)  The *Moorman*, or economic loss doctrine, covers not only negligence claims covered by contracts on the sales of goods but for claims covered by service contracts as well. *See, e.g., Anderson Elec., Inc. v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 249 (Ill. 1986). Because Defendants' alleged negligence claims seek only economic-loss damages, the Court should dismiss Count I of Defendants' Counter-claims and strike all affirmative defenses based upon this non-contractual negligence theory.[2]

Even without *Moorman*, Defendants' allegations don't state a claim. The existence of a legal duty is a question of law for the court. *See, e.g., Marshall v. City of Centralia*, 570 N.E.2d

---

[2] Except for Defendants' first affirmative defense of "failure to state a claim," Defendants' other affirmative defenses refer to its Counter-claims as the supporting grounds for the affirmative defenses. Since Defendants' counter-claims aren't legally cognizable, their affirmative defenses based on these counter-claims must fail as well.

315, 317 (Ill. 1991). Here, there is no duty. First, Lenders do not owe fiduciary duties to borrowers. *See, e.g., Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1119 (7th Cir. 1992). Second, Lenders' internal policies, which are for their own benefit, do not create duties to their borrowers to follow those policies. *See, e.g., Spriggs v. Compass Bank*, 742 So.2d 178, 181 (Ala. Civ. App. 1997). Third, absent a specific contractual agreement to the contrary, Lenders do not have a duty to the borrower to inspect or supervise the progress of a project or ensure the soundness of collateral. Rather, any inspection or appraisal is for the lender's own benefit. *See, e.g. Nymark v. Heart Fed Sav. & Loan Ass'n*, 293 Cal.Rptr 53, 56-59 (Cal. Ct. App. 1991); *Hughes v. Holt* , 435 A.2d 687, 688-89 (Vt. 1981); *Federal Land Bank of Baltimore v.* Fetner, 410 A.2d 344, 348 (Pa. Super. Ct. 1980). This is the case even when the contract has provisions for the lender to inspect the project. *See, e.g., Armetta v. Clevetrust Realty Investors*, 359 So.2d 540, 543 (Fla. Dist. Ct. App. 1978). These legal principles prohibit each alleged instance of negligence that Defendants have pleaded because LaSalle owed no duty to Paramont to either take or refrain from taking any of the actions that Paramont alleges. (Compl. ¶ 19).

### III. Illinois Doesn't Recognize a Free-Standing Claim for Breach of the Implied Duty of Good Faith and Fair Dealing

For Count II of their Counter-Claims, Defendants allege a claim for breach of the implied duty of good faith and fair dealing based on the same litany of alleged duties and breaches that formed the bases of their legally-deficient negligence claim. (Defs' CC ¶¶ 21-24). Under Illinois law, the covenant of good faith and fair dealing is not an independent cause of action. *See, e.g., Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Products, Inc.*, 212 F.3d 373, 381-82 (7th Cir. 2000); *Echo, Inc. v. Whitson Co., Inc.*, 121 F.3d 1099, 1105-06 (7th Cir. 1997); *Voyles v. Sandia Mortgage Corporation*, 751 N.E.2d 1126 (Ill. 2001). Rather, it is just a principle that "guides the construction of the explicit terms in the agreement." *Beraha*

*v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992); *Voyles v. Sandia Mortgage Corporation*, 751 N.E.2d at 1130-31 (stating that covenant of good faith is a rule of contract construction, not a source of independent tort liability); *Koehler v. First National Bank of Louisville*, 597 N.E.2d 1261 (Ill. App. 1992)(refusing to recognize tort of bad faith in the lender-borrower context).

Nor does the duty of good faith and fair dealing serve as an independent source of contractual duties. *See, e.g., Gore v. Indiana Ins. Co.*, 876 N.E.2d 156, 162 (Ill. App. 2007); it applies only to specific contractual terms that involve discretion. *Beraha*, 956 F.2d at 1443-45; *see also, ITQ Lata, LLC v. MB Financial Bank, N.A.*, 317 F.Supp.2d 844, 851 (N.D. Ill. 2004); *Citicorp Savings of Ill. v. Rucker*, 629 N.E.2d 1319, 1324 (Ill. App. 1998). So the claim can only be one for breach of contract based on the opposing party's bad faith in performing or failing to perform a specific contractual obligation in which it is vested with discretion. *Beraha*, 956 F.2d at 1443-45. Most importantly, it is not a breach of the duty of good faith and fair dealing to enforce one's rights or otherwise hold to the terms of the contract. *See, e.g., Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.*, 815 N.E.2d 911, 916 (Ill. App. 2004)("Parties are entitled to enforce the terms of their negotiated contracts to the letter without being mulcted for lack of good faith.").

Here, Defendants attempt to assert a free-standing claim for breach of the implied duty of good faith and fair dealing, a claim that doesn't exist. They don't assert a claim for breach of contract by alleging facts to show LaSalle's lack of good faith in performing a specific contractual obligation in which LaSalle was vested with discretion because they can't. Instead, Defendants assert that LaSalle either took actions that the contract did not prohibit LaSalle from taking or that LaSalle did not take actions that the contract did not require LaSalle to take. In short, Defendants are trying to mulct LaSalle for lack of good faith. Therefore, the

Court should dismiss Count II of Defendants' Counter-claims and strike any affirmative defense based upon this theory.

**IV.   The Illinois Credit Agreements Act Bars Defendants' Negligent Misrepresentation Counter-Claim/Affirmative Defense**

Defendants allege Negligent Misrepresentation for Count III of their Counter-Claims, which they base upon LaSalle's alleged representation that it would extend additional funds to cover Paramont's costs overruns on the Amberleigh Woods Project. (Defs' CC at ¶¶ 25-29). This alleged promise was not in writing and was not signed by LaSalle or Paramont.

Under the Illinois Credit Agreements Act, 815 ILCS 160/0.01 et seq., in order for a party to maintain a claim, counter-claim or defense related to a commercial credit agreement, the agreement must be in writing and signed by both parties.[3]  815 ILCS 160/2 and 160/3. Defendants cannot avoid the Act by attempting to cast their claim as a tort cause of action. Indeed, the precise claim asserted by Paramont in this case was specifically rejected in *McAloon v. Northwest Bancorp, Inc.,* 654 N.E.2d 1091 (Ill. App. 1995)(developer could not state claim for misrepresentation based on lender's alleged promise to extend credit). *See also First Nat'l Bank v. McBride Chevrolet, Inc.,* 642 N.E.2d 138, 142 (Ill. App. 1994)("There is no limitation as to the type of actions by a debtor which are barred by the Act, so long as the action is any way related to a credit agreement."); *Teachers Ins. & Annuity Ass'n of America v. LaSalle Nat'l Bank*, 691 N.E.2d 887-88 (Ill. App. 1998); *Whirlpool Fin. Corp. v. Sevaux*, 96 F.3d 216, 225-26 (7th Cir. 1996).  A Guaranty given in order to secure a loan is also a credit agreement subject to the Act's requirements. *See, e.g., Bank One v. Roscetti*, 723 N.E.2d 755, 762-63 (Ill. App. 1999).

---

[3] A credit agreement is defined as "an agreement or commitment by a creditor to lend money or extend credit or delay or forbear repayment of money not primarily for personal, family or household purposes, and not in connection with the issuance of credit cards."  815 ILCS 160/1(1).

Thus, even if LaSalle's loan officers had made verbal promises to extend more funds to Paramont after Paramont had borrowed the maximum amount under the loan documents, such an oral promise would be legally unenforceable as a matter of law.  Because the Illinois' Credit Agreements Act bars Defendants' negligent misrepresentation claim, the Court should dismiss Count III of the Defendants' Counter-Claims and strike any affirmative defense based upon it.

**V.     Paramont's Breach of Contract Claim is Insufficient as a Matter of Law.**

LaSalle's only contractual obligation under the Promissory Note is to make an advance of funds upon request "which [LaSalle]in good faith believes to emanate from a properly authorized representative of [Paramont], whether or not that is in fact the case."   (Note at ¶ 2.2(a)).  LaSalle specifically did **not** undertake any contractual duty to police the expenditures of the loan proceeds or insure the project stayed on budget.  In fact, the parties specifically retained U.S. Title to perform that function.  (Escrow Agmt. ¶¶ 1-17).  LaSalle's obligation was to advance funds when requested to do so.  Paramont acknowledges it received the maximum $8.5 million under the Note.  (Defs' CC at ¶¶ 30-32).

Defendants' Count IV is based on four different theories, none of which have anything to do with LaSalle's contractual obligatons:  (i) LaSalle failed to insist upon properly executed Requests for Payment as a condition to construction draws; (ii) LaSalle failed to make inspections of the progress of construction; (iii) LaSalle allowed construction draws without the written approval of Paramont; and (iv) LaSalle refused to allow additional draws to cover cost overruns and Phase II costs.  (Defs' CC at ¶31).

As an initial matter, theory (iv) is barred by the Illinois' Credit Agreements Act for the reasons stated above:  Paramont maxed out the amount available under the Promissory Note, so any additional extension of credit needed to be in writing and signed by both parties.  It was

not.  As to the Paramont's other theories, they all involve allegations that LaSalle failed to require Paramont to satisfy a condition precedent in the agreement – conditions which are for LaSalle's benefit, not the borrower.

A condition precedent is not a contractual obligation; it is an act that must be performed "before one party to an existing contract is obligated to perform."  *Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 (7th Cir. 1993).  A party may waive a condition precedent required of the other party "either expressly or by conduct indicating that strict compliance with the conditions is not required."  *Hardin, Rodriguez & Boivin*, 962 F. 2d 628,  633 (7th Cir. 1992).  And, of course, a party "may waive a condition precedent to performance on his part[.]" *Chicago College of Osteopathic Medicine v. George A. Fuller Co.*, 719 F.2d 1335, 1343 (7th Cir. 1983).

Here, the alleged conditions precedent were all for the benefit of LaSalle, not the borrower.  Paragraph 2.2(e)(i) of the Promissory Note states: "as a **condition** of each Advance, [Paramont] shall furnish to [LaSalle] the following documents covering such Advance:  (i) Borrower's disbursement request (a 'Request for Advance') in the form of Exhibit 'A' attached hereto . . . ." (emphasis added)  Also, the form "Request for Advance" states that any disbursement by LaSalle "is subject to all terms and **conditions precedent** for the disbursement of loan proceeds, including, without limitation, inspection of the Project . . . ." (Note, Ex. A)(Dkt. #1)(emphasis added); *see also,* Escrow Agreement at ¶ 20 (LaSalle "***may ente****r* upon the premises at any time to inspect the progress of the construction." (Dkt. #15-2)(emphasis added).

Because a party may waive a condition precedent made for its benefit, no court has ever held that when a party does this, the other party can use that waiver as the basis for its breach of contract claim.  The court in *In re Fordham,* 130 B.R. 632 (Bankr. D. Mass. 1991) rejected this very claim in another lender-liability suit.  *Id.*  at 642.  There, as here, another borrower in

default under a construction loan raised a counter-claim for breach of contract against a lender for failing to require the borrower to satisfy conditions precedent that were in the loan agreement for the lender's benefit. *Id*. at 636-42.  In rejecting this claim, the court held: "Even in the absence of provisions expressly authorizing a waiver of conditions to a lender's obligations, the lender is entitled to waive the conditions because they are for its benefit." *Id*. at 642; *see also, Gatoil (U.S.A.), Inc. v. Washington Metro. Area Trans. Auth.*, 01 F.2d 451, 455 (D.C. Cir. 1986)("It is true that WMATA, as the beneficiary of the condition precedent, had the power to excuse its failure[.]");  *Walter E. Heller & Co., Inc. v. American Flyers Airline Corp.*, 459 F.2d 896, 901(2d Cir. 1972)("However, it is hornbook law that a condition precedent in favor of one of the parties may be waived by that party.")

Aside from this, these conditions precedent do not give rise to any independent duties of care to a borrower. *Armetta v. Clevetrust Realty Investors,* 359 So.2d 540, 543 (Fla. Dist. Ct. App. 1978)("[P]rovisions contained in a loan agreement solely for the protection of the lender do not create a duty on the part of the lender to others.").  This isn't surprising.  If the party has a right to do something, then an exercise of that right can't form the basis of liability.  Nonetheless, this is the Defendants' theory, which the Court should disregard.

Notwithstanding this, Paramont also specifically agreed in the Promissory Note that it "does hereby irrevocably confirm, ratify and approve all such Advances by [LaSalle] . . . ." (Note at ¶ 2.2(a)).  When LaSalle makes an Advance under the Promissory Note, then the only term under which Paramont can sue for breach of contract is (i) if LaSalle had made an Advance to a person other than an authorized representative of Paramont and (ii) that Advance was not based on a good-faith belief that the person was an authorized representative of Paramont.  (Note at ¶ 2.2(a)).  Of course, Paramont has not, and can not, make this allegation.  Paramont alleges that LaSalle deposited the funds with U.S. Title, Paramont's agent for receiving the funds, and that Arch Land, Paramont's general agent for the Amberleigh Woods project,

submitted requests to U.S. Title for the funds. (Escrow Agmt at ¶¶ 11 and 22). Therefore, Defendants' breach of contract claim fails as a matter of law, and the Court should dismiss Count IV of Defendants Counter-Claims.

**VI. Defendant Barket's Alleged Revocation of the Guaranty Should Be Dismissed.**

Barket asks the Court in Count V to declare that his attempted revocation of the Guaranty was proper, (Defs' CC at ¶¶ 33-34), and also asserts as an affirmative defense that the Guaranty is not enforceable. (Defs' CC at p. 5). To the extent Barket bases his claim and defense on LaSalle's alleged negligence, breach of implied duty of good faith and fair dealing, negligent misrepresentation, and breach of contract, the claim and defense fail for the same reason those claims and defenses fail.

Barket also alleges that he revoked the Guaranty because LaSalle "refused to disburse funds to pay carrying charges for the month of September 2007, although it was obligated to do so under the terms of the Note until Paramont's counsel made written demand coupled with a revocation of Barket's Guaranty[.]" (Defs' CC at ¶15). But this attempted revocation fails as a matter of law. In the Guaranty, Barket agreed that any change in the loan documents and any delay in disbursing funds does not "release, discharge, or affect in any way" his obligations under the Guaranty. (Guaranty at ¶ 4). So the Court should dismiss Barket's counter-claim and affirmative defense of revocation.

**VII. Defendants' Affirmative Defenses of Failure to State a Claim and Failure to Mitigate Damages Should Be Stricken.**

On September 13, 2005, LaSalle agreed to provide Paramont a revolving line of credit up to $6.5 million. (LaSalle Compl. at ¶ 9, Exhibit A)(Dkt. #1). The line of credit, which took the form of a promissory note, was modified on February 7, 2006 and December 14, 2006, increasing the maximum amount under the loan to $8.5 million and extending the maturity

date of the Note from September 12, 2007 to May 1, 2008.  (LaSalle Compl. at ¶¶ 10-11), Exhibits B and C) (LaSalle Compl. at ¶¶ 12-13)(Dkt. #1).

On September 13, 2005, Barket signed a Guaranty of Payment and Performance in which he absolutely and unconditionally guaranteed Paramont's punctual payments under the Note.  (LaSalle Compl. at ¶ 30, Exhibit D).   Paramont stopped paying LaSalle the interest due under the Note beginning in September 2007.  (LaSalle Compl. at ¶¶ 20-25).  As of April 9, 2008, Paramont owes LaSalle $8.5 million in principal, interest of $593,249.20, and late fees and other charges of $24,137.69. The interest continues to accrue. (LaSalle Compl. at ¶ 26). Despite these simple, specific allegations, Defendants assert as an affirmative defense that "Plaintiff's Complaint fails to state a claim upon which relief can be granted."  (Defs' CC at p.4).  These allegations more than satisfy the pleading requirements of Fed.R.Civ.P. 8(b).  So the Court should strike this affirmative defense.

The Court should also strike Defendant's "failure to mitigate" affirmative defense. (Defs' CC at p.5).  Defendants give no grounds supporting this defense, but merely refer to the reasons "set forth in Defendants' Counterclaims. (Defs.' CC at p.5).   To the extent it relies on the Counter-Claims, however, it is insufficient for the same reason they are.  More fundamentally, there are no plausible grounds for this defense.  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1959 (2007).  That is not the case here.

## CONCLUSION

For these reasons, the Court should dismiss each of Defendants' Counter-Claims and Strike each of Defendants' Affirmative Defenses.

- 16 -

Dated: August 13, 2008                              Respectfully submitted,


 /s/ Todd A. Rowden
Todd A. Rowden
Scott P. Clair
Thompson Coburn LLP
55 E. Monroe St.
Chicago, IL 60603

Mike W. Bartolacci
Thompson Coburn, LLP
One US Bank Plaza
St. Louis, MO 63101
(314) 552-6126
Fax (314) 552-7126
mbartolacci@thompsoncoburn.com
*Attorneys for Plaintiff LaSalle, N.A.*

- 17 -

CERTIFICATE OF SERVICE

    The undersigned certifies that on August 13, 2008, the above BRIEF IN SUPPORT OF LASALLE'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES was electronically filed with the Clerk of the Court using the CM/ECF System, which will send a notice of electronic filing to all counsel of record.

                                                  /s/ Scott Clair